### BROWN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

No. 197.

1. **Criminal law ⬡=448(3)—Admission of opinion evidence held prejudicial error.**
   In a prosecution for using the mails to defraud in selling stock of a corporation organized by a person who died before the indictment, admission of testimony of an outside witness that in his opinion none of the previous enterprises of the deceased had been successful *held* prejudicial error.

2. **Criminal law ⬡=422(6)—Writing made by deceased defendant, not known of by other defendants, held inadmissible in evidence.**
   In a prosecution for conspiracy, admission in evidence against the defendants of a paper found in the effects of a person deceased, claimed to have been one of the conspirators, and in his handwriting, and tending to show his state of mind, but not shown to have been seen by, or known to, any of the defendants, *held* error.

3. **Criminal law ⬡=716—Permitting judicial decision to be read to jury held error.**
   Permitting the reading to the jury of a judicial decision relating the state of facts in another case, and condemning in advance something which must be established, if at all, by the verdict of the jury, *held* error.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Nova A. Brown and others. Judgment of conviction, and defendants bring error. Reversed.

James Mercer Davis, of Camden, N. J., and Arthur N. Sager, of New York City, for plaintiff in error Atkin.

W. C. Van Slyke and Aaron C. Thayer, both of New York City, for plaintiffs in error Brown, Davis, and Kalor.

E. Bright Wilson, of New York City, for plaintiff in error Boetzel.

George D. Zahm, of New York City, for plaintiff in error Morse.

William Hayward, U. S. Atty., and Maxwell S. Mattuck, Asst. U. S. Atty., both of New York City.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. Plaintiffs in error, with others, were indicted for using the mails in the execution of a scheme to defraud (a stock-swindling enterprise), under C. C. § 215 (Comp. St. § 10385). The usual conspiracy count under C. C. § 37 (Comp. St. § 10201), was added. The persons now seeking review are such of the defendants as were convicted upon any of the counts. Atkin, Kalor, and Boetzel were convicted of conspiracy only. This case must be remitted for a new trial, as we are convinced that prejudicial error exists, rendering it impossible to avoid the result indicated.

The story of this scheme, for our purposes, may be given very briefly. The plan of operations was to form a corporation and sell its stock, par $5 a share. The nominal business of the concern was the manufacture and/or sale of cereal foods. The part of the scheme constituting fraud and wrongful use of the mails was the sort of rep-

⬡=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

resentation made by letter to the persons called in the indictment the "victims" concerning the actual, probable, and even possible measure of success earned or sure to come to the corporations, and there was more than one corporation projected, if not actually given legal entity.

[1] The method of proving this well-known kind of offense did not vary in the main form from that ordinarily followed, and too familiar to require description. One of the episodes testified to, or at least asserted as true by the prosecution, was that some of the defendants sold this stock on a 50 per cent. commission and charged and received for it 50 per cent. above par. Another incident of this case, unusual in such prosecutions and material to the result we have reached, is that the general outline of the scheme, if not its detail, was conceived in the brain of one Elsworth, who died before indictment found. This man was plainly the leader, and a man of fertile intellect, who had been concerned with the manufacture and/or sale of cereal foods for a considerable number of years, who was said to have been previously identified with one or two very well known businesses of that kind. It is not too much to say on this record that, if the scheme was fundamentally honest or radically dishonest, it was legitimate or illegitimate in accordance with Elsworth's purpose and intent. In fact, this dead man's character and mental make-up furnished the frame and surrounding containing the efforts of the men who were actually brought to trial.

Under these circumstances a witness who had been in the same employment with Elsworth, and had worked with and under him, was asked this question:

"Did any company controlled by Mr. Edward Elsworth succeed under his management?"

Over due objection the witness was permitted to give his opinion that none of Elsworth's enterprises had succeeded. This is a typical question and ruling. We think this was clear and prejudicial error, and obviously affected several of the defendants very directly. The defense of some of them was in the main that they relied on Elsworth, admired him, and trusted him. If such defendants chose to take the stand, cross-examination as to what they knew or ought reasonably to have suspected concerning Elsworth, his history, and his business was entirely proper; but to bring in a stranger to the indictment, and permit him to tell what he thought of Elsworth's financial history, was not only immaterial (which is frequently a frivolous objection), but it was trying the defendants above indicted on another man's opinion concerning one deceased.

The plaintiff in error Atkin is a lawyer, though apparently not a practitioner. He stated that for some years past he had been "engaged with a great many companies that had been selling stock," and admitted that his duty consisted in telling his employers "how to keep the post office inspectors pacified and how to get them off their shoulders."

[2] After the decease of Elsworth certain papers were found on or in his desk and in his handwriting. They are apparently memoranda suggestive of intended talks with various of his subordinates, but par-

ticularly Atkin, whose name appears written at the top of some of them. For instance, on one of them, underneath the word "Atkin," is written the following:

"What is my answer if asked why we sold some stock at $7.50 and some at $5? I think I had better start in with my story, and not wait to find out what complaint he has."

There was no evidence that Atkin had taken any part in the making of this memorandum, or that he had ever seen it—something which he himself denies. But this piece of paper was admitted in evidence against all the defendants, and plainly tended to prove that Elsworth recognized himself as (to put it mildly) on the defensive for trying to sell stock at such a high price. It is, of course, true that any act or declaration of any conspirator, done or said in furtherance of the conspiracy, during the progress thereof and before its termination, is evidence against all the conspirators. But this rule of law does not mean that the rules of evidence are dispensed with in proving the act or declaration which is to be evidence against all.

To permit this piece of paper to go into evidence simply because it was in Elsworth's handwriting (no other reason appears) was like calling Elsworth from his grave. There was no objection to cross-examining Atkin about the matter suggested by this memorandum, but to put the memorandum itself in evidence as a method of proving Elsworth's state of mind was wrong, because it did not in the least prove the state of mind of the other defendants, especially those other than Atkin.

[3] Atkin took the witness stand and admitted or stated that he had perused the law books with respect to prosecutions under C. C. § 215. He was asked whether he had read the decision of this court in Wilson v. United States, 190 Fed. 427, 439, 111 C. C. A. 231, 243. He said he had. After some discussion concerning this once well-known prosecution the cross-examiner read to the jury (over due objection) the following from our decision:

"The commission of 50 per cent. for the sale of United Wireless stock was most remarkable. A court may almost take judicial notice of the fact that the stock of a corporation selling for twice its par value does not require the payment of such a commission to dispose of it. If it does, the selling price must be altogether artificial. The inference must be either that the company is fraudulent, if the commission is not excessive, or that the commission is fraudulent, if the company is what it purports to be."

That it was error to permit the reading of this opinion to the jury cannot be doubted. Press, etc., Co. v. McDonald, 63 Fed. 238, 11 C. C. A. 155, 26 L. R. A. 53; Harrison v. United States, 200 Fed. 662, 119 C. C. A. 78. Whether it was prejudicial error as against Atkin, considering his admissions of legal learning in this department of the law, may perhaps be doubted; and since the trial judge without exception described the scheme proven under this indictment in words quite as strong as those quoted from our decision above cited, it is urged that what the judge in charge could say could be quoted from other judges.

But these considerations cannot disprove legal error; they may avoid in some cases prejudicial error; but such instances are rare, and even in this case, as against the defendants other than Atkin certainly, the effect of reading an authoritative decision condemning in advance that which must be established, if at all, by the verdict of the jury, is wrong. The cumulative effect of the matters now sufficiently summed up is, as said in the beginning, to require a reversal and new trial.

Many other points have been submitted in argument, but they are for the most part matters of discretion. Abuse of discretion may amount to error; we do not think that any treatment of these matters would assist upon the new trial, which is hereby ordered.